UNITED STATES DISTRICT COURT

Southern District of Texas

United States Courts
Southern District of Texas
FILED

AUG 18 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| LAMONTAY AYERS, | ) | Case No. |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CITY OF INDIANAPOLIS- | ) | |
| MARION COUNTY | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

## 42 U.S.C. § 1983 AND TEXAS STATE LAW CLAIMS

Plaintiff, Lamontay Ayers, for her complaint against Defendant, alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under the United States Constitution and 42 U.S.C. § 1983.

2. The Court has Diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, and supplemental subject matter jurisdiction under 1331, and 1343(a)(3).

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Southern District of Texas, Galveston County and suffered injuries and ongoing harm in Texas including retaliation, interference with family relationships, financial and emotional damages that were felt in this District where she lives. Plaintiff also seeks damages in the amount of $10,000,000 dollars for injuries.

## II. PARTIES

5. Plaintiff LaMontay Ayers is a natural person and resident of Texas.

6. Defendant City of Indianapolis–Marion County is a municipal entity organized under the laws of Indiana.

## III. FACTUAL ALLEGATIONS

### A. Arrest and fabricated firearm evidence

7. On September 7th of 2021, Plaintiff's son, Keyon Dale, was arrested by Lawrence Police Department (LPD) while traveling to witness the birth of his child.

8. The arresting probable cause stated LPD officers recovered a firearm during the stop (serial No. BTXE281).

9. Detectives from IMPD and prosecutors from the Marion County Prosecutor's Office filed charges against the plaintiff's son based on material omissions and misrepresentations in the probable cause affidavit for the homicide investigation and subsequent plea proceedings for the homicide investigation of Joseph Felker, falsely creating the impression to the Court that the firearm seized during the LPD stop was the murder weapon in the homicide case of Joseph Felker in which the plaintiff's son was charged.

10. In fact, the actual murder weapon (serial No. BDEY001) had been recovered months prior to Plaintiff's son's arrest according to prosecutor and attorney emails, FOIA ATF public record requests, and discovery compliance disclosures. However, plaintiff believes the firearm recovered during the LPD stop was maliciously linked to Felker's homicide using the FBI NIBRS database by IMPD Detective Winter and the reasons behind the omissions in the arresting probable cause affidavit and plea/sentencing orders.

11. The probable cause affidavit submitted by Detective Winter failed to disclose the exculpatory fact of the firearm (BDEY001) recovered prior to her son's arrest.

12. Plaintiff's son's rights were severely deprived with him not even receiving a police report for the homicide investigation in which he was arrested for. He was also not provided the opportunity to view police worn body camera and all Ring surveillance video provided from a witness.

## B. No-bond policy applied pre-arrest

13. Before Plaintiff's son was even arrested or had a hearing, the City applied its official "no-bond" policy for murder charges pursuant to the Marion County bond schedule.

14. This policy resulted in Plaintiff's son being held without bond for an extended period without an individualized judicial determination, depriving him of his liberty and severing Plaintiff's contact with him.

## C. Care of Plaintiff's grandson due to CPS involvement

15. Plaintiff's grandson was born on September 7, 2021.

16. In June of 2023, due to domestic violence involving the child's mother and her boyfriend—who had a criminal record including animal mutilation—Plaintiff took custody of her grandson as a result of Dallas County CPS involvement.

17. Plaintiff's son has recently shared that the boyfriend had walked his child's mother on dog leashes.

18. When Plaintiff's grandson first came to stay with her, she observed what appeared to be scratches on the child's bottom from what appeared to be his own nails and diaper rash. At the time, Plaintiff believed this was likely a result from constipation and diarrhea from transitioning from formula to cow's milk. Her grandchild also refused to allow anyone to feed him by turning his head or sealing his mouth shut during attempts to feed him with a spoon or fork. He would only eat

4

finger foods he could feed himself. Plaintiff is prayerful that her observations were not a result of abuse to him after hearing that her grandson's mother was being walked on dog leashes by her boyfriend who had a criminal conviction of mutilating animals.

19. From April 2023 through August 2023, Plaintiff provided daily care for her grandson.

20. In August of 2023 her grandson was returned back to his mother per Dallas CPS and plaintiff has regretfully been unable to see him since.

21. Plaintiff has sadly never seen her son and grandchild together.

22. Plaintiff is in constant worry of the wellbeing of her grandchild.

D. Loss of paternity rights and continuing harm

23. While Plaintiff had physical care of her grandson in August 2023, she obtained a legal grandparent DNA test confirming her son's biological paternity.

24. When Plaintiff's son learned his child was back in Indiana with the mother, he sought to establish paternity. The court denied him that opportunity, citing Indiana's statute of limitations for children over the age of two.

25. Plaintiff's son was unlawfully detained for two and a half years due to the City's fabricated murder charge that was dismissed and the City's no-bond policy for murder charges.

26. The firearm recovered during the LPD traffic stop may have been unlawfully and maliciously linked to the homicide investigation of Joseph Felker and the reason why the plaintiff's son was not provided with material discovery such as police reports and amendments submitted by Detective Winter.

27. As a result, Plaintiff was deprived of her constitutional right to familial association and relationship with her son and grandchild and her family has been denied legal recognition of his paternity.

### E. Retaliation for public records disclosures

28. Plaintiff independently obtained public records, including shell casing lab files and police reports, revealing the fabrication and omission of evidence.

29. After disclosing this evidence in another case, IMPD officers visited her son in prison in an act of retaliation.

30. Plaintiff was obstructed from accessing 26 separate clerk's public records requests.

31. A transcript where a judge stated he believed the firearm from the LPD stop was seized under the murder case was later removed from the public records portal where plaintiff's public record requests were maintained.

32. Plaintiff reported these retaliations to the City's legal counsel and filed complaints with the U.S. Department of Justice.

### F. Case Management Guidelines Policy Enforcement

33. Plaintiff engaged in protected speech and submitted a letter to the Court to address concerns of her son not being provided with all Ring Surveillance video, witnesses not being deposed, and ineffective assistance from his public defenders in May of 2023.

34. The Court did not address any of the concerns depriving her son of his constitutional rights.

35. The Court instead referenced the case as being "old" and enforced the City's Case Management Guidelines Policy for murder charges to be tried, pled, or dismissed within 365 days. The Court said a hired attorney would need to be ready for a jury trial in only two weeks. The Court first referenced these policies in an October 2022 hearing while addressing plea negotiations after plaintiff's son was incarcerated approximately one year.

36. This Court's enforcement of the City's Case Management Guidelines policy caused the plaintiff severe emotional and financial distress/ruin with attempts to prevent her son's Due process rights from being further violated.

37. Plaintiff nor her son were aware of the recovered firearm at the time of the May 2023 hearing as the public defenders never mentioned it.

38. Plaintiff's concerns of Brady violations was confirmed after receiving an email from the attorney she hired in February of 2024 that included 34 hyperlinks to videos. This was more than the 22 videos the public defender informed the plaintiff about via email in April of 2023.

7

## IV. CAUSES OF ACTION

Count I – Violation of the First and Fourteenth Amendment Right to Familial Association (42 U.S.C. § 1983)

39. Plaintiff incorporates the above allegations.

40. By fabricating evidence (including probable cause), applying the no-bond policy pre-hearing, and withholding exculpatory information, Defendant deprived Plaintiff of her liberty interest in the companionship and association of her son and grandson.

41. The no-bond hold prevented the plaintiff from advocating for her son who has a diagnosis of ADHD and was not being provided with all discovery while incarcerated.

Count II – Violation of Fourteenth Amendment Procedural Due Process (42 U.S.C. § 1983)

42. Defendant deprived Plaintiff of her familial relationships without due process by enforcing a no-bond murder policy without an individualized hearing.

Count III – Violation of Fourteenth Amendment Substantive Due Process – Fabrication of Evidence (42 U.S.C. § 1983)

43. Defendant tolerated the fabrication of probable cause and suppression of evidence, causing wrongful pre-trial detention of Plaintiff's son and even irreversible breakdown of Plaintiff's familial association, integrity, and bonding

with her son and grandson with the denial of her son's petition to establish paternity in January of 2025.

Count IV – First Amendment Retaliation (42 U.S.C. § 1983)

44. Defendant retaliated against Plaintiff for exercising her right to petition and access public records by obstructing access to court transcripts.

Count V – State Law – Infliction of Negligent and/or Intentional Emotional Distress

45. Defendant's conduct was extreme, outrageous, and undertaken with the intent to cause severe emotional distress, which Plaintiff has suffered and continues to suffer such as intergenerational denial of familial association with her grandchild with her son's unlawful pretrial detention for murder charges that were dismissed, inability to work at times due to emotional distress from legal proceedings, crying while at work when caring for patients who are also prisoners and require care for injuries occurring while in prison, foreclosure proceedings on her home as a result of loss of income from emotional distress and inability to work resulting from the defendants actions.

46. In January of 2025, Plaintiff was informed that her son's petition to establish paternity for her grandchild was denied due to Indiana statute of limitations and her grandson being older than two years old. This is permanent and irreversible damage to her family's integrity and right to familial association. The City's No Bond policy for murder charges enforcement was the moving force and cause of

9

harm to plaintiff. The effects have been felt in Texas where plaintiff lives alone and without family and friend support.

47. In February of 2024, Plaintiff received an email from the attorney she hired to represent her son. It contained an email provided from a witness to IMPD detectives. This email confirmed her concerns of Ring surveillance video being suppressed. Public defenders stated they only received 22 video clips, yet the email was noted with 34 inactive hyperlinks to video clips. The enforcement of the City's Case Management Guidelines for murder charges was the moving force and cause of harm to plaintiff.

Municipal Liability (*Monell v Dept of Social Services*) (42 U.S.C. § 1983) All Claims

48. The forementioned constitutional violations were caused by the City's official policies, widespread customs, and/or with deliberate indifference to the plaintiff's constitutional rights to familial association and due process of law guaranteed by the First and Fourteenth Amendments as outlined below.

49. The City maintains an official bond schedule policy for murder charges that sets "no bond" and was applied prior to her son's arrest.

50. The City maintains an official Case Management Guidelines policy for murder charges, and it's enforcement caused severe emotional distress and financial harm to the plaintiff while attempting to advocate for the deprivation of her son's rights and Brady Violations for suppression of surveillance video evidence.

10

51. The City maintains a custom and practice of fabricating evidence and sworn affidavits, suppressing material evidence/Brady Violations, and/or misrepresenting forensic evidence, including firearms, to secure wrongful charges as evidenced by dismissed murder charges of the plaintiff's son's case, and exonerations/dismissals in other murder cases involving Leon Benson, Anthony Bendolla, and Richard Grundy.

52. With deliberate indifference to the plaintiff's 1st and 14th amendment rights, the City maintains a pattern of obstructing public records and altering transcripts and/or court dockets when those records reveal misconduct as evidenced by multiple records requests being obstructed from access to the plaintiff via the online management portal.

53. With deliberate indifference to the plaintiff's 1st and 14th amendment rights, the City maintains a pattern or custom of tolerating and/or encouraging retaliations against those who engage in protected speech of reporting misconduct as evidenced by prison visits of the plaintiff's son by an IMPD detective after making whistleblower disclosures in a complaint, obstruction of the plaintiff's clerk public records request, obstruction of plaintiff's hearing transcripts request, and even retaliations against their own employees who make whistleblower allegations.

54. With deliberate indifference to the plaintiff's 1st and 14th amendment rights, the City has failed to train and supervise its employees and/or representatives on constitutional disclosure obligations of Brady violations and prohibitions on

retaliation for protected speech despite being noticed by letters of advocacy submitted to the Courts and emails to its representatives and/or Counsel.

55. These policies, customs, and failures were the moving force behind Plaintiff's injuries suffered while living in Texas.

56. Plaintiff is not challenging her son's underlying conviction with this complaint.

## V. DAMAGES

57. Plaintiff seeks compensatory and punitive damages for her claims of loss of familial association, emotional distress, retaliations, and other harms in the amount of $10,000,000, and other relevant costs.

58. While no amount of money can compensate the irreparable harm and loss of familial integrity with the grandson she prayed for and God blessed her family with, it will prayerfully help her family attempt to rebuild and regain trust in the judicial system. It will also not compensate for the emotional harms done while knowing her grandson was subjected to someone with a criminal history of mutilating animals and walking his mom around on dog leashes while her son was incarcerated without bond, with a malicious framing of firearms for a murder he didn't do.

59. After being blessed with a home in Texas and leaving Indiana and an abusive marriage where plaintiff was strangled to the point of unconsciousness, suffered fractured bones requiring surgery, burns, rape, and financial abuse; plaintiff was unable to heal and instead forced to endure the injuries of

emotional distress of she and her son's rights being unlawfully deprived. This has caused severe emotional distress as she works in a hospital where prisoners are treated for sometimes life-threatening injuries. With retaliations being ongoing she fears for both of their lives. She has experienced financial ruin as a result of mental anguish with the incapacity to work at times.

60. She is extremely grieved by the irreparable harm of her son not being able to establish paternity of her grandchild, the generational effects it will have on their family, and the ongoing retaliations she has experienced while she is living alone in Texas.

Relevant Caselaw

61. Moore v. city of East Cleveland, 431 U.S. 494 (1977)-Recognized that extended family living arrangements are also protected under substantive due process

62. Stanley v. Illinois, 405 U.S. 645 (1972)-Unmarried Fathers have a protected interest in the custody of their children.

63. Meyer v. Nebraska, 262 U.S. 390 (1923)- Family integrity is protected by the Due Process Clause

64. ODonnel v. Harris County-use of preset bail schedules without individualized assessment violates Due Process and Equal Protection

65. Pickering, 391 U.S. at 571; Lane v. Franks, 573 U.S. 228 (2014). Plaintiff's disclosure of forensic misconduct and suppression of exculpatory evidence

constituted protected speech on a matter of significant public concern (Pickering, 391 U.S. at 571; Lane v. Franks, 573 U.S. 228 (2014)). Retaliatory acts taken by Defendants to silence or punish Plaintiff violated the First Amendment, as such speech lies at the core of constitutional protection and outweighs any asserted government interest in suppressing it.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for:

a. Compensatory and Punitive damages in an amount of $10,000,000;

B. Costs and any further relief the Court deems just and proper.

JURY DEMAND: Plaintiff demands trial by jury on all issues so triable.

Dated: August 18, 2025

Signature: _____

Lamontay Ayers

P.O. Box 262, Dickinson Texas 77539

lamontayayers@gmail.com

14